[L. A. No. 4061. In Bank.—April 29, 1918.]

UNION HOLLYWOOD WATER COMPANY, Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation), et al., Respondents.

WATER RATES — ORDINANCE — VALUATION OF PROPERTIES — METERS NOT IN USE.—In an action by a water company to restrain the enforcement of an ordinance of a municipal corporation regulating water rates to be charged by persons or corporations supplying water within the municipality, the trial court in calculating the valuation of the plaintiff's working properties was not wrong in excluding from consideration 589 meters installed in houses unrented and unused at the time the valuations were made, and where there was no sufficient showing that such meters would be used during the year for which the rates were fixed, especially in view of the fact that the

court had fixed a valuation upon 3,172 meters and service connections in actual use, which was more than double the valuation placed thereon by the plaintiff, in its verified statement of its properties attached to its complaint.

ID.—UNUSED EMERGENCY PUMPING PLANT—FINDING OF TRIAL COURT SUSTAINED.—Where a pumping plant formerly in use had been shut down, but was maintained as an emergency plant to be put into use in the event of any interference with the service from plaintiff's other sources of supply, the trial court properly concluded that such plant was not such an essential part of plaintiff's system as to justify the imposition of an added rate, and with the discretion of the trial court to make such finding the supreme court will not interfere.

ID.—ADEQUACY OF VALUATION — CONFLICTING EVIDENCE — FINDINGS NOT DISTURBED.—Where the evidence as to the necessity for the use and also the valuation of certain easements and right of way was detailed, extensive, and conflicting, the findings of the trial court in respect to such properties will not be disturbed on appeal.

ID.—WATER-BEARING LANDS—RULE FOR VALUATION.—A finding of the trial court that certain water-bearing real estate constituting a part of plaintiff's plant and system was not of the value of two hundred and twenty-five thousand dollars, but was of the value of ninety-two thousand five hundred dollars, to which was added the further finding that the court did not consider the value of the water in said land separate and apart from said land, but fixed the value of said water-bearing land by comparing its value with similar water-bearing land in the same locality, capable of producing a like amount of water, was proper.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial. Robert M. Clarke, Judge.

The facts are stated in the opinion of the court.

Haas & Dunnigan, and Sheldon Borden, for Appellant.

Albert Lee Stephens, City Attorney, and Wm. P. Mealey, Deputy City Attorney, for Respondents.

RICHARDS, J., *pro tem.*—This is an appeal from an order denying the plaintiff's motion for a new trial. The action was one brought to obtain an injunction to restrain the defendant, city of Los Angeles, from enforcing a certain ordinance regulating the water rates to be charged by persons, firms, or corporations supplying or distributing water in or to

the city of Los Angeles or the inhabitants thereof, or to or for the use of vessels in Los Angeles harbor for the year commencing July 1, 1910, and ending June 30, 1911.  Plaintiff was one of the corporations coming within the terms and provisions of the ordinance in question.  The issue presented before the trial court was whether the provisions of the ordinance, if enforced, would afford the plaintiff a reasonable return upon its investment in the various kinds of properties owned or used by it on July 1, 1910, and which were essential and necessary in its business of distributing water to the inhabitants of Los Angeles during the year in which said regulative ordinance was in force.  It is conceded that upon the hearing of the cause the trial court conducted a minute and exhaustive investigation as to the value of the plaintiff's various properties and as to the extent of their necessary use as parts of its operating and distributing system, and that upon these matters in controversy the testimony was much at variance.  The appellant insists, however, that as to certain specified matters the findings of the court have no support in the evidence, and that the ordinance generally is unreasonable and confiscatory, and hence void.  The first finding which the appellant thus assails is the finding of the trial court to the effect that only 3,172 of the service connections and meters owned by the plaintiff were used or necessary to be used for the distribution and sale of plaintiff's water within the city of Los Angeles.  The evidence in this respect showed that the plaintiff was engaged in the distribution of water not only within a certain area within the city of Los Angeles, but also in and to districts without the limits of said city, and that for the purpose of operating its entire system within and without said city it owned and had in use 4,039 service connections and meters, and that of this number there were actually in use within the city of Los Angeles 3,172 of such service connections and meters.  The evidence also showed that in addition to this latter number in actual use within said city the plaintiff owned and held 589 meters which were not in actual use at the time the court's valuations were made.  These were called dormant meters, and according to the testimony of the secretary of the plaintiff most of these dormant meters had been installed in new properties, such as houses which had been built, but not as yet rented or used.  The value of these unused meters, according to the valuation

placed by the trial court upon those in use, would have amounted at best to a very small proportion of the total valuation of the plaintiff's other properties, and even if added to said valuation, could have effected at most a very small increase in plaintiff's water rates. It is clear, moreover, that the trial court was not wrong in the exclusion of these 589 meters from its calculation in respect to the value of the plaintiff's working properties. These meters and other connections were idle at the time the valuations were made. They had never as yet come into use as a revenue producing part of the plaintiff's water system within said city. They were installed in advance of the actual necessity for their use, and there was no sufficient showing that they would be used during the year for which the rates were fixed, and the other water users and rate payers of the city should not be charged an additional amount, however small, in the way of a water rate in order to yield a return to plaintiff upon a species of property which was not in actual use as a part of its system, and which was yielding no return to plaintiff prior to the passage or taking effect of said ordinance. In addition to this, our attention is called to the fact that the trial court, in its fixation of a value upon the 3,172 meters and service connections of the plaintiff in actual use at the time of such valuation, placed a value thereon which is much more than double the valuation which the plaintiff itself placed thereon in the verified statement of its properties attached to its complaint; and our attention has not been called to any evidence in the record increasing this latter valuation. If this be so, then it follows that the court has already allowed the plaintiff a valuation upon this item of its properties far greater than it was entitled to have placed upon it for the purpose of the fixation of a water rate, and it cannot, therefore, be said that the plaintiff was in anywise prejudiced by any error of the court in failing to include the 589 meters in question in arriving at such valuation.

For these reasons we are unable to say that the trial court abused its discretion in the omission of this item from its valuation of the plaintiff's essential properties for the purpose of determining their total value and of regulating its water rates.

The appellant's next contention is that the court erred in its finding that a portion of the plaintiff's properties, known

as the Jefferson Street plant, including its lots, wells, and water rights in adjacent acres, were unnecessary and not essential to its distributing system within said city. Prior to the organization of the Union Hollywood Water Company, in the year 1906, the Jefferson Street pumping plant had been owned and operated by a corporation known as West Los Angeles Water Company, and was being used to supply water to the western portion of that city lying in its vicinity. Upon the organization of the Union Hollywood Water Company, however, it took over the properties of the West Los Angeles Water Company, a part of which was this particular plant, and also took over the properties of another corporation known as West Side Water Company, which was at the time engaged in serving water to another section of the western part of said city. After this consolidation of these two corporations had been effected in the name of, and under the ownership of, the plaintiff herein the latter developed an additional water supply from certain water-bearing lands at Sherman, which rendered unnecessary the further operation of the Jefferson Street pumping plant, and in the beginning of the year 1908 the latter was shut down and so continued to be up to and after the commencement of this action. It is conceded that this was the condition of things at the time of the trial, but the appellant insists that notwithstanding this fact, its Jefferson Street pumping plant was being maintained by it as an emergency plant to be put into use in the event of any interference with its water service from its other sources of supply. There was evidence, however, tending to show that this plant was not at the time connected with the rest of the plaintiff's water system, and that the installation of some two miles of pipe would be required to make such connection. Taking these facts into consideration, the trial court concluded, and we think properly, that the Jefferson Street plant, in its state of nonuse and disconnectedness, was not such an essential part of the plaintiff's distributing system as to justify the imposition of an added water rate upon its customers. With the discretion of the trial court to make this finding from the state of the evidence before it, this court will not interfere upon appeal.

The appellant's next contention, to which considerable space is devoted in its opening brief, is that the trial court did not place an adequate valuation upon certain easements

and rights of way over private property which were a part of its system for supplying water to the inhabitants of Los Angeles; and that the court, in reaching a basis for the valuation of this class of property, included as unnecessary and nonessential a considerable part of the plaintiff's acquired easements and rights of way. As to this latter contention we do not think it is sustained by a fair construction of the finding of the trial court, but that with certain designated exceptions, such as the so-called Soldiers' Home reservoir, the Jefferson Street pumping plant and its adjacent water-bearing acres, the Day tract, etc., the trial court was undertaking to place a valuation upon all of the plaintiff's properties in the nature of easements and rights of way over the lands of private parties. Whether or not that valuation was sufficient depends upon the evidence upon that subject, which evidence was detailed, extensive, and conflicting, and this being so, the finding of the court upon that subject will not be disturbed.

We might go on dealing in detail with the other alleged errors of the trial court in arriving at its conclusions as to the proper amount and value of the plaintiff's various properties for the purpose of arriving at a basis of total valuation upon which to predicate a reasonable water rate to be charged by the plaintiff and collected from its customers for the year covered by the terms of the ordinance in question, but the discussion would be unprofitable, since the conclusion in each of these matters must, in the state of the evidence, have rested in the sound discretion of the trial court.

There is, however, one remaining question which deserves separate consideration. This is the contention of the appellant that the trial court adopted a wrong principle of valuation in its finding relative to the value to be placed upon the water-bearing lands of the appellant. The finding which the plaintiff thus assails reads as follows:

"That plaintiff was also on said date the owner of water-bearing real estate constituting a part of said plant and system, but said water-bearing real estate was not of the value of two hundred and twenty-five thousand dollars, but was of the value of ninety-two thousand five hundred dollars. And in making this finding the court does not consider the value of the water in said land separate and apart from said land, but fixed the value of said water-bearing land by comparing

its value with similar water-bearing land in the same locality, capable of producing a like amount of water.''

In respect to this finding the appellant contends that it was entitled, in excess of the valuation which the trial court placed upon its water-bearing lands as real estate, to have its rights in and to the water collected or contained therein admeasured and ascertained as separate from and in addition to the value of the land as land.   The discussion of this phase of the appellant's case has reference particularly to the lands of the plaintiff at Sherman, the waters in which are percolating waters which are collected and extracted from the subsurface of said land by means of powerful pumps, and when so extracted are transferred to plaintiff's reservoirs and mains and thence conveyed to its customers.   There was evidence before the court that there were other lands in the vicinity of the so-called Sherman lands of plaintiff which also contained these or other percolating waters derived from the same higher sources as those supplying plaintiff's said lands.   It was these facts in relation to the original state of these waters prior to the plaintiff's extraction of them which controlled the conclusion of the court that they were a part and parcel of the soil itself, having an appraisable valuation as a part of the land through which they percolated.   It was these facts also which differentiated the cases cited by appellant from the case at bar, for in each of them the water rights which the courts recognized as having an appraisable value apart from the land were those appertaining to reservoirs or to surface lakes or streams.   It is not necessary to consider the question as to whether, in the case at bar, the trial court might have adopted a method of valuation in which the percolating waters in the tract would be considered as appraisable apart from the value of the land as land, for the reason that both methods of valuation were open to its adoption under the authority of *Marin Water etc. Co.* v. *Railroad Commission,* 171 Cal. 706, 715, [Ann. Cas. 1917C, 114, 154 Pac. 864].

The trial court adopted and applied the rule approved in this case as the basis for its valuation of the plaintiff's water-bearing lands, and having a separate valuation to the pumping works, which in effect separated the percolating waters from these lands, and we are of the opinion that it was not in error in so doing; nor do we think that it abused its dis-

cretion in the value which it affixed upon this portion of the plaintiff's properties, in view of the evidence before it.

The contention of the appellant that the ordinance under review is unreasonable, confiscatory, and hence unconstitutional, depends for its force upon the appellant's foregoing contentions as to the under-valuations of its properties or portions thereof, and since these have not been sustained, this final contention must of necessity also fall.

No other points appear in the record requiring separate consideration.

The order is affirmed.      .... ...  .

Shaw, J., Victor E. Shaw, J., *pro tem.*, Sloss, J., Wilbur, J., Melvin, J., and Angellotti, C. J., concurred.